UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

financialright GmbH,
Katharina Prinzessin zu
Hohenlohe, Hartmut Bäumer,          Case No. 2:17-mc-51337
and Eithne Higgins,                 District Judge David M. Lawson
                                    Magistrate Judge Anthony P. Patti
            Applicants,
v.

Robert Bosch LLC,

            Respondent.
_____/

**OPINION AND ORDER DENYING APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 (DE 1)**

## I.    Introduction

The Applicants in this case – financialright GmbH ("financialright"),[1]

Katharina Prinzessin zu Hohenlohe, Harmut Bäumer and Eithne Higgins – ask this

court to exercise its discretionary authority to assist in the production of evidence

for use in a foreign tribunal pursuant to 28 U.S.C. § 1782. Applicants claim that

they "are current or potential litigants seeking relief in German and Irish courts in

connection with Volkswagen AG … and Bosch GmbH's...well-known 'clean-

_____

[1] Petitioner financialright GmbH is a legal service provider that "bundles"
individual claims assigned to it, as German law apparently does not provide for
class actions. (DE 1 at 12.) This is necessary "because there is no collective
action available in Europe, [so] German law permits the bundling and assignment
of claims." (DE 20 at 15.)

1

diesel' fraud." (DE 1 at 9.)  More precisely, each of the Applicants is now, or on

the date this petition was filed was allegedly on the brink of becoming, a plaintiff

against Volkswagen AG, Volkswagen Group of Ireland Ltd and/or Audi AG and

"possibly Bosch GmbH." (DE 1 at 11-12.)  These actions are now pending in

Germany and Ireland (collectively the "European Litigation"), but, as explained

below, the history of these lawsuits or of related lawsuits gives reason to question

whether any of them will proceed to a conclusion on the merits.  Applicants assert

that this Court should order Respondent to produce documents for use in the

European Litigation.  The documents at issue, or the categories thereof, are listed

in the proposed nonparty subpoena, which is attached as Exhibit 2 to the petition.

The proposed subpoena seeks not only specified categories of documents, but also

the broad category of "[a]ll Documents and Communications that [Bosch]

produced to the plaintiffs" in the civil multidistrict litigation (MDL) in *In re*

*Volkswagen 'Clean Diesel' Marketing, Sales Practices, & Products Liability*

*Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.).  (DE 1-1, 1-2.)

## II.    Factual Background

This application emerges from the recent criminal prosecution, related

MDL, and ongoing scandal revolving around Volkswagen Group of America's

("VOA") and Volkswagen AG's well-documented efforts to feign compliance with

United States environmental protection laws by installing technology that would

yield doctored vehicular emissions readings on diesel powered vehicles. Judicial notice is taken of the recent criminal convictions of Volkswagen AG and some of its executives in this very Court. *See* Case No. 2:16-CR-20394-SFC-APP (E.D. Mich.). Accused of similar acts designed to contravene European environmental laws, Volkswagen AG and Volkswagen Group of Ireland Ltd. are now the targets of consumer actions in the European Litigation. Although Audi AG was also apparently named as a defendant in Germany, neither Respondent Robert Bosch LLC ("Bosch" or "Respondent") nor its European affiliate, Robert Bosch GmbH, are named as a parties in the European Litigation. (Rother Decl., DE 10-3 at 2, ¶ 4; O'Dwyer Decl. DE 10-5 at 4-5, ¶¶ 7-12). In fact, Applicants' counsel told the Court that he does not believe that the European Litigation includes any "Bosch-related entity with the name Bosch in it." (DE 20 at 23.) However, the Applicants do claim that Bosch is the inventor of the "defeat devices" which VOA used to mask the true emissions generated by its vehicles in the United States and that this same technology was in play on the other side of the Atlantic. Identifying themselves as "European citizens who purchased diesel vehicles under the false impression that they were 'clean diesel' vehicles that met European standards for Carbon Dioxide and Nitrogen Oxide (NOx) emissions and were thus lawfully approved for sale by their respective countries[,]" (DE 1 at 11), Applicants

accordingly argue that the discovery sought from Bosch here is highly relevant to the issues now pending before the German and Irish courts.

## A.    The German Litigation

### 1.    The Test Case

As explained in the declaration of German attorney Henning Bälz, in early 2017, a "test case" was filed by counsel for the Applicants in the Braunschweig District Court in Germany.  This lawsuit alleged that Volkswagen AG installed a defeat device in its European vehicles in violation of European regulation (EC) No. 715/2007.  (DE 10-2 at 3-4, ¶¶ 5, 6, 11; DE 10 at 15.)  The test case was filed "on behalf of financialright representing the interests of a single assignee[,]" based upon "the unique theory that under the European Union ("E.U.") Law, the Certificate of Conformity…VW issued to the car owner was incorrect as a result of the emissions manipulation and was therefore invalid."  (DE 14-2 at 5, ¶ 10.)  The lawsuit "raised a number of claims based on tort and breach of contract."  (DE 10-2 at 5, ¶ 10.)  These claims were rejected, along with the plaintiff's request to produce certain specified documents, finding that "'the production of the respective documents is not relevant for the decision in this litigation.'"  (DE 10-2 at 5-6, ¶¶ 11-12; *see also*, the German court's opinion in German and certified as translated into English, DE 10-2 at 10-70, including ¶ 235 therein.)  As set forth in the summary of its holding found on the first page of the opinion, the court

dismissed the case and held that the "plaintiff bears the costs of the proceeding." Significantly, this dismissal occurred notwithstanding the court's finding that "Plaintiff's vehicle contains an illegal defeat device" under EC Reg. No. 715/2007. (DE 10-2 at 48, ¶ 67; *see also,* DE 10-2 at 5, ¶ 11.)  Notably, the court made clear that the "questions formulated by Plaintiff" were not being referred to the European Court of Justice (ECJ).  (DE 10-2 at 68, ¶ 231; DE 20 at 37-38.)  Thus, the test case "has so far failed."  (DE 10-2 at 6, ¶ 14.)

As Applicants' own German attorney explains, the Braunschweig District Court's "decision is currently on appeal to the Higher Regional Court of Braunschweig."  (DE 14-2, ¶10.)  The Application had little to say about this test case, although Respondent Bosch helpfully provided the Court with the test case's procedural history.  At oral argument, Applicants conceded that the German court had dismissed the test case after finding that there was no viable claim, and that it remains on appeal.  (DE 20 at 19, 13.)

## 2. The Applicants' Litigation

The application represents that, "Applicant Katharina Prinzessin zu Hohenlohe *intends to* file a lawsuit in the coming months against Volkswagen AG, and *possibly* Robert Bosch GmbH, in the District Court of Braunschweig in Germany.  On March 16, 2017, Applicant Hartmut Bäumer filed a lawsuit *against*

*Volkswagen AG and Audi AG* in the District Court of Berlin in Germany." (DE 1 at 11) (emphases added).

The application further represents that, "Financialright intends to bundle claims from European Volkswagen owners to pursue similar legal actions in Europe against Volkswagen and *possibly* Bosch GmbH." (*Id.* at 11 (emphasis added)). Applicants filed a reply brief, which was several days tardy. (DE 14.) Meanwhile, on November 6, 2017, the date their reply brief was due,[2] and perhaps pressured by Respondent's arguments that all but one of the Applicants had no litigation then actually pending in Germany and that these Applicants have been sitting on the fence about commencing litigation for way too long, a new "bundled" lawsuit was filed in Germany by financialright "on behalf of 15,374 individuals." (DE 14-2 at 4-5, ¶ 9; DE 18 at 2.) Applicants' attorney informed the Court at the December 8, 2017 oral argument that Ms. Hohenlohe's case has been bundled into this new case. (DE 20 at 12.) The Applicants further represent, through the declaration of German attorney Christopher Rother, that this new lawsuit brings "claims under a different legal theory" than the test case, including "intentional infliction of harm under section 826 of the German Civil Code." (DE

---

[2] The response was timely filed on October 27, 2017. (DE 10.) "If filed, a reply brief supporting a nondispositive motion must be filed within 7 days after service of the response, but not less than 3 days before oral argument." E.D. Mich. LR 7.1(e)(2)(C). Thus, applicants' reply was due on or about Monday, November 6, 2017. Fed. R. Civ. P. 6(d). It was not filed until November 10, 2017. (DE 14.)

14-2 at 5.) They additionally claim that this new theory is based "on the act of the installation of engines containing the Bosch software algorithm ('defeat device')...." (*Id*.) The declaration is noticeably vague in identifying the defendant or defendants in this new German lawsuit, but, in the context of its characterization of the new lawsuit as an improved version of the test case under a different legal theory, and, in light of the demand letter to Volkswagen AG which is attached to the declaration, it appears that Volkswagen AG may be the only defendant. (DE 14-2, ¶¶ 10-12; DE 14-2 at 20-22.) When pressed at oral argument, however, Applicants' attorney clarified that none of the participants in any of the German Litigation is a Bosch-related entity, *i.e.*, neither Robert Bosch LLC nor Robert Bosch GmbH. (DE 20 at 23.)

### B. The Irish Litigation

The application explains that, "[o]n November 18, 2015, Applicant Eithne Higgins filed a lawsuit against Volkswagen AG and Volkswagen Group of Ireland Ltd. in the District Court of Castlebar in Ireland." (DE 1 at 11; *see also,* DE 14-3.) Bosch has endeavored to distinguish this lawsuit from the Volkswagen-related emissions scandal in the United States by pointing out that Ms. Higgins's lawsuit, as originally filed, was about $CO_2$ emissions, not the NOx emissions that have been at issue in the Volkswagen MDL. (*See* DE 10 at 12, fn. 3.) However, the Court is not persuaded by this distinction, for two reasons. First, Ms. Higgins's claim was

subsequently amended (on June 7, 2016) to include NOx.  (O'Dwyer Decl., DE 14-3 at 3, ¶ 4-5; *see also,* Irish court order, DE 14-3 at 52, ¶ 1.)  According to Ms. Higgins's retained expert, "[t]he Volkswagen defendants consented to the application[,] as it was the Volkswagen defendants that raised the issue of NOx affecting their EA 189 engines, including that of Mrs. Higgins."  (O'Dwyer Decl., DE 14-3 at 3, ¶ 4.)  Second, the Court is not convinced that a technology designed to thwart emissions readings for NOx could not be used for the same or a closely related purpose with respect to $CO_2$.

Nevertheless, it was acknowledged at oral argument that, as of now, the Irish Litigation consists of one claim by one person for a maximum of €15,000.  (DE 20 at 26.)[3]  Although Applicants argue that the eventual success of Ms. Higgins's claim will have a collateral estoppel effect upon future litigation to the benefit of other would-be plaintiffs (DE 20 at 24), this Court has been shown no definitive legal authority to that effect and finds that such an argument is grossly speculative, particularly in light of the current "limbo" status of Ms. Higgins's lawsuit, as described below.  Further, it must be noted that Ms. Higgins's claim is actually *capped* at €15,000, as is acknowledged in her Castlebar pleading.  (DE 14-3 at 39, "General Damages not exceeding €15,000.00" and "to recover against the

_____

[3] Which converts to $18,439.67 (U.S.) as of February 12, 2018.
http://www.xe.com/currencyconverter/convert/?Amount=15000&From=EUR&To=USD

Respondent damages not exceeding €15,000 (*Fifteen Thousand Euro Only*)….”
(emphasis in original).)  (*See also,* DE 10 at 12.)  Perhaps even more importantly,
the Irish Litigation was successfully appealed on jurisdictional grounds and, on
December 5, 2017, was remanded to a new judge in the trial court to explore the
question of jurisdiction.  (DE 20 at 27, 40-41.)  As of now, the Irish Litigation is
hardly thriving, if it is even past the starting line.

## III.    Procedural Background

This application returns to this Court through an oddly circuitous route.  A
substantially equivalent application under 28 U.S.C. § 1782 was first filed by these
Applicants on March 17, 2017 in the District of New Jersey in Case No. 17cv1818.
The application was considered by Magistrate Judge Steven C. Mannion and
granted on June 19, 2017.  (DE 10-10.)  Judge Mannion granted leave to issue a
subpoena to VOA, Audi, and Bosch, requiring them to produce documents in
Washington, D.C. or any other mutually agreeable location.  He further ordered the
subpoenaed entities and the applicant to meet and confer before filing any motions
regarding the subpoena.  The Applicants served the subpoena on Bosch on June 30,
2017.  The parties met and conferred and were apparently unable to agree with
respect to Bosch's objections to the subpoena.

Then, on August 1, 2017, Bosch filed in this District a motion to quash the
subpoena, which was assigned to District Judge Arthur J. Tarnow and Magistrate

Judge David R. Grand and given case number 2:17-mc-51049-AJT-DRG.  (*See* DE

10-12.)  The parties subsequently stipulated to have the subpoena withdrawn, that

Bosch would preserve "any and all arguments made in its Motion to Quash and

supporting brief[,]" and that the applicants would have to file a new application if

they were to seek discovery from Bosch under the statute in the future.  The Court

entered an order implementing that stipulation on August 18, 2017.  (*Id.*)

A little over a month later, on September 29, 2017, the instant application

was filed and assigned to District Judge David M. Lawson, who in turn referred it

to the assigned and undersigned Magistrate Judge for a hearing and determination.

(DE 11.)  Oral argument was held on December 8, 2017, and, upon inquiry from

the bench, the parties explained that, in essence, the District of New Jersey's order

granting the application needs to be revisited here because Bosch's North

American headquarters is in Farmington Hills, Michigan, *i.e.,* in this District.  In

other words, Bosch's jurisdictional challenge to the subpoena previously issued by

the District of New Jersey was likely to succeed, or at least, "had some teeth to it."

## IV.    Legal Framework: A Two Step Inquiry

### A.    Statutory Factors/Requirements

The present application is governed by 28 U.S.C. 1782(a), which reads as

follows:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

As one court has summarized these threshold requirements for exercising authority under the statute:

A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007); *see also, Bey v. Resurgent Mort. Serv'g*, No. 14-51040, 2014 WL 5512663, at *2 (E.D. Mich. October 31, 2014) (Drain, J.).

If all of the statutory requirements are met, § 1782 then "authorizes, but does not require, a federal district court to provide assistance." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). In ruling on such an application, "a district court must first consider the statutory requirements and then use its discretion in balancing a number of factors." *Brandi-Dohrn v. IKB Deutche Industriebank*, 673 F.3d 76, 80 (2d Cir. 2012). Put another way, a § 1782 application "presents two inquiries, first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so." Buchwalter, Annotation, *Construction and Application of 28 U.S.C.A. § 1782, Permitting Federal District Court to Order Discovery for Use in Proceeding in Foreign or International Tribunal*, 56 A.L.R. Fed.2d 307, § 2 (2011). If the court concludes that any of the statutory requirements are not met, thus depriving it of the authority to grant relief under the statute, the inquiry ends there; however, if the statutory requirements are met, the court goes on to consider the discretionary factors. Importantly, "the district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp.*, 542 U.S. at 264 (citing *United Kingdom v. United States*, 238 F.3d 1312,

1319 (11th Cir. 2001)).  "Once the statutory requirements are met, a district court is free to grant discovery in its discretion."  *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (internal citations omitted).  In exercising this discretion, the court takes "into consideration the 'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P. et. al.*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *In re Metallgesellschaft,* 121 F.3d 77, 79 (2d Cir. 1997)).

### B.    Discretionary Factors

The parties agree, as they must, that the leading and controlling authority is supplied by the Supreme Court's decision in *Intel*, where Justice Ginsburg, writing for the majority, identified "factors that bear consideration in ruling on a § 1782(a) request."  *Intel Corp*., 542 U.S. at 264.  These factors are consistently introduced by discretionary language, such as "may take into consideration[,]" "could consider[,]" and "may be rejected or trimmed."  *Id.* at 264-265.  As applied to the present application for discovery, the factors that "bear consideration" are:  **(1)** Whether Bosch is a participant in the foreign proceedings; **(2)** the nature of the foreign tribunals, including **(a)** the character of the proceedings underway in the European Litigation and **(b)** the receptivity of the foreign government or tribunal to

judicial assistance from United States federal courts; **(3)** whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or of the United States; and, **(4)** whether the requests are unduly intrusive, and, if so, whether they ought to be "rejected or trimmed." *Id.* at 265.

## V.    Analysis / Discussion

### A.    The Statutory Factors / Requirements Have not Been Met.

As a threshold matter, the Court must determine whether this application meets the statutory requirements in order for the requested relief to be authorized. As confirmed at oral argument and as is evident from its brief, Bosch does not contest that certain statutory elements are met, namely that: (a) the request is being made by interested persons; (b) the request seeks evidence in the form of document production; and, (c) Bosch resides or is found in this district, in light of the fact that its North American headquarters is in Farmington Hills, Michigan. (DE 10 at 16-20; DE 20 at 30.)

Bosch does contest the Applicants' claim that the evidence is "for use in a proceeding in a foreign or international tribunal," with emphasis on the "for use" component. (DE 20 at 45.) At the time of its initial response brief, Bosch argued that the evidence being sought here was not "for use," because there was then no German litigation pending on behalf of these Applicants (excepting Bäumer's

lawsuit), Ms. Higgins's Irish lawsuit had been stayed, and the European Litigation involved only $CO_2$ emissions, not the NOx emissions that were at issue in the Volkswagen MDL.

The parties agree, as is clear from the statute itself and the case law applying it, that a foreign proceeding need not be *actually pending* in order to obtain relief. (DE 20 at 46.) *See, Mees v. Buiter*, 793 F.3d 291, 299 (2nd Cir. 2015). Indeed, the statute only requires that the material sought be "for use in a proceeding[,]" not "for use in pending litigation." As Bosch points out, a foreign proceeding must be "within reasonable contemplation," and the applicant "must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Certain Funds*, 798 F.3d at 123; *see also, Intel*, 542 U.S. at 259 ("[W]e hold that § 1782(a) requires only that a dispositive ruling…be within reasonable contemplation."). As the Second Circuit so memorably put it, the application must show "[a]t a minimum, some concrete basis from which [the Court] can determine that the contemplated proceeding is more than just *a twinkle in counsel's eye*." *Id* at 124 (emphasis added).

Furthermore, Bosch points out that the test case brought against Volkswagen in Germany "casts serious doubt that any of the requested discovery could be 'for use' in German proceedings." (DE 10 at 17.) Second, Bosch argues that "the

requested documents appear to be unrelated to the proceedings Ms. Higgins commenced in Ireland." (*Id*. at 18.) Third, Bosch characterizes the German Applicants' attorney's representation that he is "'planning to file complaints' against Volkswagen AG and 'possibly' Robert Bosch GmbH in district courts in Germany" as "purely hypothetical[,]" particularly in light of the fact that he had remained on the fence for so long about actually filing them. (*Id*.)

But events moved swiftly. As Bosch noted in its motion for leave to file a sur-reply, Applicants filed a tardy reply brief, which allowed them to file a new lawsuit in Germany (on November 6, 2017) in the interim between Bosch's October 27, 2017 response and the Applicants' November 10, 2017 reply. (DE 18 at 2.) The newly filed German lawsuit gave the Applicants room to argue that not only was their "bundled" German Litigation objectively contemplated – as further demonstrated by the extensive, detailed explanation of their counsel regarding the steps he took to prepare for litigation and draft pleadings (*see* DE 1-3) – but also that it has actually commenced.

At oral argument, Bosch further argued, albeit passively, that the Court should consider the Application as of the date it was filed, before the newly filed (bundled) German Litigation was pending, and not based upon subsequent events. (DE 20 at 43.) Upon questioning from the bench, however, Bosch conceded that, if the Court were to ignore the current status of litigation in Germany (and

presumably ignore the fact that Applicant Bäumer has had a suit pending in Berlin since March 2017), nothing would preclude the German Applicants from simply filing an altered application, relying upon the newly filed German Litigation in support. Bosch's counsel further acknowledged that, "we've obviously brought to your attention developments since that date [of the Petition being filed][,]" and stated, "I'm not going to object to…your consideration of it." (*Id*.) With an eye toward judicial economy, especially since this is the third time this application or a subpoena stemming from it has been considered, the Court is not inclined to pretend that the newly pending and bundled German Litigation is just a "twinkle in counsel's eye." Even if the Court were to roll back history to the *status quo ante*, it has no trouble finding on this well-supported record that all of the Applicants' German Litigation was "within reasonable contemplation," based upon "objective indicium" of their intent. *Certain Funds*, 798 F.3d at 123.

However, notwithstanding either the actual pendency of the two country European Litigation or the objective evidence of Applicants' intention to pursue proceedings in Germany, the Court is not convinced that the requested documentation is "for use" in either German or Irish proceedings. This is so because of what has happened when German and Irish courts have actually considered Applicants' claims. Consistent with this Court's reluctance to ignore the most recent European Litigation history, it is also reluctant to ignore the

German and Irish courts' prior negative rulings in these lawsuits. This Court is mindful of the fact that the "for use" requirement could be satisfied even if the discovery in question is not necessary for Applicants *to succeed* in their foreign proceeding. *Mees*, 793 F.3d at 299. But the Court is also mindful that if history is any guide to the future, the documents in question will not be "usable" and, therefore, not "for use" in these foreign proceedings. The Court takes cognizance of the fact that Ms. Higgins's lawsuit has already been successfully appealed on jurisdictional grounds in Ireland, where it has now been remanded to re-explore that very issue, and that, in Germany, the test case against Volkswagen was rejected on the merits. As Bosch points out, this latter rejection "casts serious doubt that any of the requested discovery could be 'for use' in German proceedings." (DE 10 at 17.)

Although Applicants argue, through the declaration of their German attorney, that this newest lawsuit brings "claims under a different legal theory" than the test case, including "intentional infliction of harm under section 826 of the German Civil Code" based "on the act of the installation of engines containing the Bosch software algorithm ('defeat device')…[,]" (DE 14-2 at 5), this Court fails to see how this theory of liability is any different from the previously rejected test case, wherein the German court's dismissal occurred notwithstanding its finding that "Plaintiff's vehicle contains an illegal defeat device" under EC Reg. No.

715/2007.  (DE 10-2 at 48, ¶ 67; *see also,* DE 102 at 5, ¶ 11.)  Notwithstanding the new pursuit of "intentional infliction of emotional distress" damages in Germany, it seems inescapable that liability in all three lawsuits – the previously rejected test case and the current ones – is premised on the installation of "illegal defeat devices" in motor vehicles presumably containing Bosch's logarithm.  Moreover, as explained in the second Bälz Declaration, "the Braunschweig district court expressly considered and rejected the purportedly 'different legal theory' under Section 826 of the BGB upon which, Mr. Rother asserted, his new case is based" and "the Braunschweig district court expressly considered and rejected whether '§ 826 BGB also entitles [the plaintiff] to claim the reimbursement of the vehicle's purchase price' based on the plaintiffs [sic] allegation that the defendant 'purportedly acted unethically in that [it] developed and installed the software and issued a false certificate of conformity to [the plaintiff].'"  (DE 18-3, ¶¶ 5-6; DE 10-2 at 42-43, 67, ¶¶ 17, 214.)  As Applicants themselves acknowledged at oral argument, the "*de minimus* number of recoveries in Europe" in the defeat device cases is based on "a difference of authority—the reach of authorities in Europe over the companies."  (DE 20 at 7.)  In light of the German court's prior ruling, Applicants' failure to show why the Bäumer case or the newest "bundled" cases in Germany are likely to obtain a different outcome, the "*de minimus* number of recoveries in Europe," and the lesser "reach of authorities in Europe over the

companies," this Court fails to see how the documents being requested here from Bosch can be "for use" in the German Litigation.[4]

Applicants have similarly failed to convince this Court that the Bosch discovery is "for use" in the Irish Litigation. As Ms. Higgins's Irish attorney explains in his declaration, "the Court granted leave to bring Judicial Review proceedings and in so doing, also granted a stay on the further hearing of any proceedings in the District Court pending the outcome of the plenary Judicial Review hearing." (DE 1-5, ¶ 37.) That stay was granted on September 15, 2016, just over a year before the present Application was filed. (DE 1-16 at 5-6, DE 1-5 at 10, ¶ 37.) The September 15, 2016 Order of the High Court, to which he refers in his declaration, clearly prohibits the District Court for County Mayo, *i.e.*, Ms. Higgins's trial court, "from proceeding with" her case against Volkswagen. (DE 1-16 at 3, ¶ 1 and at 5, ¶ 2.) At oral argument, Applicants agreed that the Irish Litigation has been stayed, pending judicial review of the trial court's jurisdiction to hear the case. (DE 20 at 15.) The Court thus agrees with Respondent that "there's no basis on which [it] can conclude that there is a proceeding that will go forward in which it would be useful . . ." to grant this Application. Or, put another

---

[4] As Respondent further points out with respect to the Bäumer case, which was filed in Berlin in March of last year, very little information has been provided in that regard, and Applicants have not come to this Court and claimed to have "hit a roadblock" for which they need specified evidence to prove an identifiable point. (DE 20 at 40.)

way, "there is no proceeding in reasonable prospect in which…discovery might serve a purpose or might be used," so as to satisfy the threshold requirements of § 1782.  (DE 20 at 41-42.)

Finally, a few words must be said in regard to the supplemental filing recently received from Applicants.  (DE 21.)  In it, they argue that a January 9, 2018 discovery order by Magistrate Judge Corley in the MDL (DE 21-1) is instructive as to the relevancy, and thus the "use," of the documents sought here for purposes of the European Litigation.  (DE 21 at 3-4.)  Leaving aside the merely persuasive nature of this authority, and with the utmost respect for my sister Magistrate Judge in California, the order has no bearing in the instant matter.  First, the order does not obviously relate to European litigation (let alone *this* European Litigation) or European car owners; rather, it relates to American litigation brought by shareholders of Volkswagen.  Notably, Judge Corley's ruling does not relate to an application brought under § 1782, and so, does not consider any of the factors under analysis here.  As Bosch points out, prior rulings in the MDL regarding discovery requests more analogous to what is being requested from Bosch here have been denied.  (DE 22-2 at 4 and orders cited therein.)  Of particular note is Judge Corley's September 15, 2017 order denying the United States' request to share MDL discovery material with foreign counsel, in which she stated that "if the Civil Division were permitted to share Discovery Material with [a German law

firm], Volkswagen would not receive the protections contemplated by these narrower German rules."  (DE 22-4 at 4.)  This Court agrees, and Judge Corley's observation will be borne in mind later in this opinion.

Applicants seem to believe that they can get more mileage out of Judge Corley's ruling than is actually available.  Judge Corley prefaced her discussion, and in large part, grounded her opinion on *what was pleaded* in the operative investors' complaint, namely *the allegation* that:  "Volkswagen misrepresented to investors that the company's vehicles 'complied with emissions standards in all 50 US states and the Euro-5 standards in Europe.'"  (DE 21-1 at 3 (quoting ¶ 83 of the First Am. Consol. Sec. Class Action Compl.).)  *See also,* DE 21-1 at 2 ("Given these EU-related *allegations*….") (emphasis added).  In light of these allegations, which are specific to the MDL, undoubtedly pleaded under American securities law, and made in the context of that particular American litigation, she found that "documents concerning EU emissions standards" are "not render[ed]…irrelevant." (DE 21-1 at 5.)  *See also* DE 21-1 at 2 ("…does not render documents concerning EU emissions irrelevant.")  This is not the same as making a definitive ruling "that the alleged conduct related to the clean diesel emissions fraud was inseparable in material elements as between the EU and the United States[,]" as Applicants

represent. (DE 21 at 2.)[5] Finally, notwithstanding Applicants' representation to the contrary, Judge Corley did not "find" that "the term 'akustikfunktion' was a term VW 'used internally and in discussions with Robert Bosch GmbH to refer to the defeat device used in its 'clean diesel' vehicles.'" (DE 21 at 2). Rather, she only noted that this had been "*alleged* in the operative complaint[.]" (DE 21-1 at 6 (emphasis added).) The Court is disheartened by the liberality of this characterization and the "spin" applied to Judge Corley's order.

For these reasons, the Court finds that Applicants have failed to meet their burden to demonstrate that the discovery sought from Bosch is "for use" in foreign proceedings. *Certain Funds,* 798 F.3d at 120 ("their application fails to satisfy the statute's 'for use' requirement, because the Funds have not met their burden of establishing that they are in a position to use the evidence they seek through their § 1782 application in those ongoing foreign proceedings."). The application is therefore **DENIED** on this basis.

## B. Alternatively, the *Intel* Discretionary Factors Weigh in Respondent's Favor.

As explained above, having concluded that the Applicants failed to meet the statutory requirements, the Court's inquiry ends and the discretionary factors under *Intel* need not be analyzed. Nevertheless, the Court will analyze those factors here,

---

[5] Indeed, the words *inseparable* and *material* are not to be found anywhere in her opinion, or at least not in that context.

as it alternatively finds that the Application should likewise be rejected on this basis.  Bosch argues that all of the discretionary factors favor denial of the application, refusing to concede that any of them might tip in Applicants' favor.  While the Court disagrees, finding that the various factors tip in both directions, it does agree that *on balance* they weigh in favor of Bosch.

### 1.    Whether Bosch is a participant in foreign proceedings

Bosch argues that "there are avenues to seek the production of documents from nonparties under German law[,]" citing the declaration of German Attorney Henning Bälz.  (DE 10 at 22; DE 10-2, ¶ 20.)  However, the Supreme Court has made clear that "when the person from whom discovery is sought is a participant in the foreign proceeding…, the need for § 1782(a) aid generally is not as apparent as it *ordinarily is* when evidence is sought from a *nonparticipant* in the matter arising abroad."  *Intel*, 542 U.S. at 264 (emphases added).  The significance of this distinction stems from the fact that, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence[;]" whereas, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*

Here, Applicants state in their brief that "Bosch LLC is not and will not be a defendant in any of the Applicants' actions; they have filed or will file only against

the German and Irish Volkswagen or Bosch entities[,]" and then their counsel

confirmed at oral argument that neither "Bosch U.S." nor "Bosch Europe" is

named as a party in the European Litigation and that he "do[es]n't believe" that

any "Bosch-related entity with the name Bosch in it" is a party either. (*See* DE 1 at

22, DE 20 at 23.) Since the foreign courts have not obtained jurisdiction over

Respondent in the Irish and German lawsuits, and bearing in mind that one of the

"twin aims" of the statute is to provide "efficient means of assistance to

participants in international litigation in our federal courts[,]" *Certain Funds,* 798

F.3d at 117 (internal citations omitted), even if there is *some mechanism* by which

the German courts could potentially obtain this information, this factor favors

Applicants. As a nonparticipant in the foreign proceedings, evidence from it may

therefore be unobtainable in the absence of § 1782(a) aid.

## 2. The nature of the foreign tribunals

### a. The character of the foreign proceedings

The character of the proceedings underway in the European Litigation

weighs heavily against granting this Application. As explained in some detail

above, both the Irish and German courts have previously rejected Applicants'

claims, in the former case on jurisdictional grounds and in the latter on the merits,

of a nearly identical test case filed by the same counsel. Neither rejection bodes

well for Applicants. Although this Court cannot look into a crystal ball, Applicants

have given no compellingly distinguishable reason for this Court to believe that the newly filed German Litigation is likely to continue or that the discovery requested here can have any meaningful effect on the outcome. This is so, because, in the test case, the court found that "'the production of the respective documents is not relevant for the decision in this litigation.'" (DE 10-2 at 5-6 ¶¶ 11-12; *see also*, the German court's opinion in German and certified as translated into English, DE 10-2 at 10-70, including ¶ 235 therein.) This conclusion was reached despite the court's further finding that "Plaintiff's vehicle contains an illegal defeat device" under EC Reg. No. 715/2007 and its finding that the plaintiff had failed to state a claim against Volkswagen. (DE 10-2 at 48, ¶ 67; *see also,* DE 10-2 at 5, ¶ 11.) Bosch's attorney noted at oral argument that the newly filed German Litigation has been assigned to the same panel of judges which rejected the test case. (DE 20 at 37.) This Court is not inclined to burden a nonparty with the production of documents that have previously been rejected as irrelevant by the foreign tribunal in question. *See, Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("[D]istrict courts must be alert for potential abuses that would warrant a denial of an application" including "discovery of documents or other materials that the foreign court would not admit into evidence.") Nor is this Court inclined to order such production where the "use" of the documents is so seriously brought into question, as explained above.

### b.  Receptivity of the foreign government or tribunals to judicial assistance from United States courts

Neither party claims that the European governments or courts in play here are necessarily *hostile* towards efforts by U.S. courts to assist them.  We are, after all, talking about Ireland and Germany.  On the other hand, both parties acknowledge that discovery in Europe generally, or in these countries particularly, is not nearly as broad as American-style discovery.  In fact, as Applicants admit, "'German Civil Procedure does not allow general pretrial discovery[.]'"  (DE 1 at 23) (quoting *In re California State Teachers' Ret. Sys.*, No. CV 16-4251 (SRC), 2017 WL 1246349, at *2 (D.N.J. Apr. 3, 2017)).  As Applicants acknowledged at oral argument, "we didn't have any ability to get discovery to respond to the degree of specificity necessary in German pleadings . . ." and "there is no discovery presently in German proceedings."  (DE 20 at 19-20.)  Applicants begin their argument in the negative, urging this Court to find that "there is no indication that Germany or Ireland are *not* receptive to [] foreign discovery."  (DE 1 at 25 (emphasis added).)  However, they go on to affirmatively cite "numerous decisions in U.S. courts under § 1782 finding that German and Irish courts are receptive to the kind of aid involved in this Application."  (*Id*. at 26, collecting cases.)  A common theme which emerges from these opinions is that the party resisting the discovery has the burden of demonstrating that the foreign court or government is *un*receptive to the materials.  *See, e.g., In re the Application of Sauren Fonds-*

*Select SICAV*, Civ. No. 2:16-cv-00133, 2016 WL 6304438, *2, *6 (D.N.J. Oct. 26, 2016); *In re Request for Subpoena by Ryan Air Limited*, Case No. 5:14-mc-80270-BLF-PSG, 2014 WL 5583852, *2 (N.D. Cal. Oct. 31, 2014).

Bosch urges a contrary conclusion, arguing that where "neither party has presented 'authoritative proof' regarding the receptivity of the [foreign tribunal] to the discovery materials requested[,]" *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008), the Court should conclude that the foreign tribunal is *not receptive* to assistance. (DE 10 at 25.) Bosch posits that "there is a dearth of German authority condoning reliance on evidence obtained through U.S. discovery practices[,]" citing a German attorney's declaration. (DE 10 at 25; DE 10-2 at 8 ¶¶ 21-22.) Bosch also reminds the Court that the German authorities, including the German Federal Financial Supervisory Authority ("BaFin") and the Braunschweig Prosecutor's Office, have rejected efforts to obtain information "related to their investigations of Volkswagen's alleged misconduct." (DE 10 at 25-26; *see* DE 10-4.) At oral argument and in its briefing, Bosch explained that the prosecutor's reluctance is likely related to the fact that there is an ongoing criminal investigation, which is certainly understandable. (DE 20 at 58, DE 10 at 26.) In that vein, Bosch directs the Court's attention to the Second Circuit's opinion in *Schmitz*, where the court affirmed a denial of a discovery request, finding that the "German government was obviously unreceptive to the judicial assistance of an

American federal court." *Schmitz*, 376 F.3d at 84. However, *Schmitz* is distinguishable. In that case, German governmental authorities had directly contacted the U.S. District Court and specifically requested that the discovery not be permitted, because it would interfere with a criminal investigation. Here, there has been no such request.

Finally, Bosch tries to convince the Court that the German Government is unreceptive to U.S. courts' assistance. (DE 10 at 27.) In support, it offers Mr. Bälz's declaration, in which he states that:

> In fact, legislative decisions suggest skepticism towards U.S. pre-trial discovery. In accordance with Article 23 of the Hague Evidence Convention, Germany has declared "that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries," such as letters rogatory issued by federal courts in the United States. In this context, the German legislature explained that pre-trial discovery risks the improper disclosure of business and trade secrets. The legislature has since affirmed this position by denying the adoption of a bill that would have allowed the execution of foreign discovery requests under certain circumstances.

(DE 10-2 at 8 ¶ 22.)

Persuasive authority from outside this Circuit runs in both directions on the question of how such evidence should be handled. On one hand, authority from the Second Circuit states that:

> The law on this factor is clear: "District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals" that they would reject Section 1782 assistance. "Courts have found such proof in cases where the foreign tribunal or government has written to

the district court hearing the application and expressly stated that it did not want the American court's help." The party opposing a Section 1782 application bears the burden of demonstrating that a foreign court would not be receptive to assistance from a U.S. court.

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, No. 15-mc-417 (LAK), 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (citations omitted). On the other hand, case law in the First Circuit instructs that:

> In a situation where the foreign tribunal restricts discovery, granting the application could undermine the statute's objective. *See, e.g., In re Application of Microsoft Corp.*, No. 06–10061–MLW, 2006 WL 1344091, *4 (D.Mass. April 19, 2006). Moreover, if there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for a district court to order discovery, especially where it involves substantial costs to the parties involved. In the present case, however, neither party has presented ''authoritative proof'' regarding the receptivity of the ICC to the discovery materials requested.

*In re Babcock*, 583 F. Supp.2d at 241.

Irrespective of "authoritative proof," this Court cannot ignore the fact that the German court "restricts discovery," has already signaled its unwillingness to receive certain documentary evidence (although neither party has enlightened this Court as to exactly what that documentary evidence might be), and has indicated that its law "does not enable a party to demand documents for the purpose of obtaining information independent of a conclusive pleading…." (DE 10-2 at 69, ¶

235.)  Nor can it ignore the apparent "skepticism" of the German Government

toward U.S. pre-trial discovery.  It is also quite likely that producing the requested

discovery will "involve substantial cost."  This Court does not wish to be

"irresponsible," as the *Babcock* court suggests, in the face of certain indicators that

the German tribunal may not welcome its help; yet, neither party has painted an

entirely clear picture as to receptivity in Germany.

As to Irish receptivity, Mr. O'Dwyer's Declaration states that, "The District

Courts of Ireland are receptive to the use of evidence obtained pursuant to 28

U.S.C. § 1782 in Irish courts[,]" and that he is "not aware of any policy of the

government of Ireland that would preclude § 1782 assistance." (DE  1-5 at 10, ¶¶

40-41.)  Still, even with this general statement as to the receptivity of the Irish

courts, it seems unlikely in the present posture of Ms. Higgins's case – with an

ongoing jurisdictional dispute and a damage cap at €15,000  –  that the Irish court

would welcome the broad American style discovery being proposed here.

This factor is a draw, at best, with regard to the Irish Litigation and favors

Bosch, at least slightly, with regard to the German Litigation.

### 3.     Circumvention of foreign proof-gathering restrictions or other policies of a foreign country or of the United States

The Supreme Court invites the District Court to "consider whether the §

1782(a) request conceals an attempt to circumvent foreign proof-gathering

restrictions or other policies of a foreign country or the United States."  *Intel*, 542

U.S. at 265. This discretionary factor favors Bosch. Both sides acknowledge that neither Germany nor Ireland permits American-style class (or collective) actions and that at least Germany does not favor broad, American-style discovery. The Application states that, "[T]he German and Irish courts do not have the power to compel the production of the documents from Bosch LLC, a non-participant." (DE 20 at 15, 42, DE 1 at 22, DE 1-3 at 4-5 ¶ 8, DE 10-2 at 7-8 ¶¶ 20, 22.)

In its present posture, and bearing in mind how circumscribed it would be if permitted, no discovery is likely to occur in the Irish Litigation in the foreseeable future, if ever. Significantly, damages in the Irish Litigation are capped at €15,000. (DE 14-3 at 39, DE 10 at 12.) If the case survives its jurisdictional challenge and gets back on track in the same or another trial court, it is difficult at this juncture to imagine that the type of discovery being sought from nonparty Bosch in the United States would fit within the scope of Irish proof-gathering restrictions; rather, it appears more likely that the present Application, made at a time when the Irish Litigation had already been stayed for a year (DE 1-5 at 10 ¶ 37, DE 1-16 at 5-6, DE 20 at 15) and jurisdiction is uncertain, is a masked attempt to circumvent foreign discovery restrictions.

Applicants have also failed to convince this Court that the present effort does not seek to circumvent the proof-gathering restrictions already faced, and likely to be faced again, in Germany. One remarkably similar case has already

been rejected by that country's courts. It has been shown that neither American-style class actions nor broad, American-style discovery is permitted there. And, there is at least a limited history of the German court rejecting documentary evidence from a similarly situated test plaintiff. As such, the Application does at least display the indicia of being an end-run around German discovery rules. Applicants' own German counsel makes clear that, "German civil procedure does not allow pre-trial discovery." (DE 10-3, ¶ 7.) As Applicants have informed this Court in their briefing, "[i]n Germany, a party 'cannot demand categories of documents from his opponent. All he can demand are documents that he is able to identify specifically – individually, not by category.'" (DE 1 at 23 (quoting *Heraeus,* 633 F.3d at 596 (citing *German Commercial Code & Code of Civil Procedure in English* 300-01 (Charles E. Stewart trans. 2001) (translating *Zivilprozeßordnung* §§ 420–30))). (*See also*, DE 1-3, ¶ 8.) Yet "categories of discovery" are exactly what Applicants seek to obtain here, and not from an "opponent," but, rather, from a nonparty.[6]

   To be sure, in their argument as to the first discretionary factor, Applicants point out that "the German and Irish courts do not have the power to compel the production of the documents from Robert Bosch LLC, a non-participant." (DE 1 at

_____

[6] *See* DE 1-2 (proposed subpoena seeking various categories of documents, including such things as: all test results, all computer codes, all instructions and directions, all communications, all documents, all presentations, minutes and notes, all documents produced by Bosch in the MDL, etc.).

22.)  But this reality cuts in a different direction on the question of circumventing the foreign courts' proof-gathering restrictions.  The fact that the German and Irish courts do not have the power to compel production of documents from non-participants – unlike in the United States where broad discovery from non-participants is permitted and the courts are given authority to compel it – seems to reflect a policy disfavoring this type of proof-gathering.  Indeed, as Applicants explained at oral argument, "[t]here is no authority[,] unfortunately[,] at this time in Europe for the production of documents that were produced by Volkswagen and Bosch" in the United States.  (DE 20 at 8.)  Most tellingly, Applicants' German counsel admits: "Given that the Applicants cannot clearly identify the documents sought in the necessary detail, *they are unable to obtain them in German courts*."  (DE 1-3 at 4-5 ¶ 8 (emphasis added)).  This makes the present efforts to obtain the documents here look very much like circumvention of German proof-gathering rules.

As Bosch colorfully argued in response, Robert Bosch LLC is the American subsidiary of a European parent company:  the present application is being used to "get [the Applicants' proverbial] nose under the camel's tent door in order to try to force the domestic company to produce documents that are held by its parent

company in Germany." (DE 20 at 33.)[7] Zoological analogies aside, this does have

a strong ring of truth to it. Permitting here what is not permitted there, under these

particular circumstances, would have the effect of circumventing the European

proof-gathering restrictions. As this Court reasoned in a prior opinion rejecting a

request for discovery under § 1782, "[b]ecause rational actors do not needlessly

increase their own litigation costs, there must be a reason" the Applicants seek the

information "here rather than in" the foreign country where the litigation is

pending. *In re IPC Do Nordeste, LTDA, For an Order Seeking Discovery Under

28 U.S.C. 1782*, No. 12-50624, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25,

2012) (Ludington, J.). "One reasonable explanation is that [the Applicants are]

attempting to circumvent the proof-gathering restrictions of the [foreign] court."

*In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, at *7.

Contrary to a line of reasoning suggested by Bosch, this Court does not have

concerns that this Application is being used to circumvent proof-gathering

restrictions of the United States. Bosch points out that one of the broad categories

of documents requested in the proposed subpoena includes "[a]ll Documents and

Communications that you produced to the plaintiffs" in the MDL and that it is well

---

[7] The subpoena defines "Bosch" as follows: "Robert Bosch GmbH, Robert Bosch
LLC, and its parents, subsidiaries, affiliates, predecessor entities, successor
entities, divisions, departments, groups, and any of its directors, officers,
employees, partners, members, representatives, agents (including attorneys,
accountants, consultants, investment advisors or bankers), and any other Person
purporting to act on its behalf." (DE 1-2 at 3 ¶ C.)

known and undisputed that these documents are subject to a protective order in the Northern District of California. Bosch further points out that Applicant Hohenlohe's attempt to obtain these documents through a § 1782 application in that district was rejected by Magistrate Judge Jacqueline S. Corley and District Judge Charles R. Breyer; however, as admitted by Bosch, Ms. Hohenlohe's and others' applications were not rejected on the basis of the discretionary factors, but, instead, solely upon the fact that Bosch and the other respondents "did not 'reside' and were not 'found' in the Northern District of California as required by Section 1782." (DE 10 at 13-14; *see also* DE 10-6 and 10-7.) Applicants correctly pointed out at the hearing that this protective order only restricts the parties to the MDL from using or disclosing Bosch's document production outside of that litigation; it does not restrict Bosch from producing or being compelled to produce *its own records*. Applicants also filed an *ex parte* § 1782 application for VOA's and Bosch's documents in the District of New Jersey, as noted above, apparently based upon the location of Volkswagen's North American headquarters. (DE 20 at 30.) This was initially granted, but the request for Bosch's documents was later abandoned when it became clear that Bosch had a valid jurisdictional objection and that the Eastern District of Michigan was the more appropriate place to pursue this relief. (*Id.* at 17-19.) In light of this procedural history, Bosch's characterization of Applicants having "participated in a total of four applications for discovery

pursuant to Section 1782 across the United States[,]" (DE 10 at 13), is factually accurate yet an unfair slant. These prior applications have not been repeatedly rejected by our sister courts in other federal districts other than for reasons of personal jurisdiction. It is unclear why Ms. Hohenlohe did not file her first application here, but, now that the present Application has come to the right place, it is for this Court to say whether the relief should be permitted.

For the reasons stated above, and notwithstanding its relative comfort about Applicants' previous efforts in United States District Courts, this Court shares Bosch's concern about the circumvention of foreign proof-gathering restrictions and finds that this discretionary factor favors denial of the Application.

### 4. Intrusiveness of the requests

Finally, the Supreme Court instructs that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. In determining whether such requests are intrusive or burdensome, the statute itself instructs that, "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Incorporated*,

162 F.Supp.3d 1029, 1043 (N.D. Cal. 2016) (footnote omitted); *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Applicants contend that Bosch produced "hundreds of thousands of documents" in the MDL, although its basis for this assertion is unclear. (DE 20 at 9.) Bosch argues that the subpoena in question is unreasonable in scope, particularly with respect to the request for all documents produced in the MDL. (DE 10 at 28-29.) Both parties agreed at oral argument that, in this electronic age, the MDL documents, if they exist, would already have been reviewed for privilege and organized and could be reduced to a single thumb drive. (DE 20 at 21-23, 50-51.) At the same time, Bosch represents to the Court that Robert Bosch LLC "did not produce any documents in the MDL[,]" and that the request for such documents would therefore yield nothing. (*Id.* at 33.) To the extent that there actually are any documents in this category, which may be an academic point, the Court agrees with Bosch that "the Applicants make no effort to tailor their requests in any meaningful way to their purported claims relating to violations of European law and instead seek to recapitulate discovery conducted in the VW MDL litigation." (DE 10 at 29.) The scope of the request is unreasonable.

Even without the request for MDL documents, the bulk of the 25 document requests at issue, 24 of which are not identified as documents produced in the MDL, also do not appear to be narrowly tailored as to scope or content. (*See* DE

1-2.)  This is particularly so in light of the fact that Bosch is not a party and, according to Applicants, "will not be a defendant in any of the Applicants' actions."  (DE 1 at 22.)  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) ("'Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.'") (quoting *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)).  While the Court does see the odd request which is specific to a particular document with a particular date (*e.g.*, Request Nos. 6, 11, 19 and 23), and some which specify an approximate month or year (*e.g.*, Request Nos. 7, 12-15, 22), many of these requests are prefaced by words such as "including" or "including but not limited to," indicating that they should be read more broadly. Other requests are prefaced by the word "all," seeking things such as organizational charts, test results, computer and source codes, instructions and directions, communications, presentations, minutes, notes and "documents" for a ten-year "relevant time period" running from January 1, 2006 to December 31, 2015.  The Court finds that these requests are overly broad and would be unduly burdensome to Bosch,

particularly in light of its nonparty role and the requests' lengthy temporal component.  Moreover, the Court is greatly troubled by the extraordinarily broad definition of "Bosch" in the proposed subpoena, which includes, *inter alia*, the "attorneys, accountants, consultants, investment advisors or bankers" of Robert Bosch GmbH and Robert Bosch, LLC.  (DE 1-2 at 3 ¶ C.)  Not only is this definition too broad, in and of itself, but its inclusion of "attorneys" makes it highly likely that the document requests seek information that is protected by privilege or the work product doctrine.  Its inclusion of "accountants" and "bankers" and "investment advisors" makes it quite predictable that the requests would impinge upon propriety information.  All this from a nonparty.

For the foregoing reasons, the fourth *Intel* factor weighs against granting the Application.  While it might be possible for the Court to "roll up its sleeves" and "trim" these requests to something more reasonable with significant effort, the Court will not do so here in light of its findings that: (a) the statutory requirements for relief are not met; and, (b) the other discretionary factors, on the whole, favor denial of the request for § 1782 relief.  Finally, it is noted that much of the evidence sought can be obtained from other sources, namely Volkswagen GmbH, VOA, or perhaps even Bosch GmbH, an effort which Applicants have already initiated in the District of New Jersey, which is home to Volkswagen's North

American headquarters.  *See In re IPC Do Nordeste, LTDA*, 2012 WL 4468886 at *1.

## VI.    Conclusion and Order

The Court having found that the documents at issue in this application have not been shown to be "for use" in foreign proceedings, the statutory requirements for granting this § 1782 request have not been met.  Alternatively, the *Intel* discretionary factors weigh against granting this Application.  On either basis, the Application is **DENIED.**

**IT IS SO ORDERED.**

Dated: February 12, 2018                    s/Anthony P. Patti
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 12, 2018, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Anthony P. Patti